Your Honor, resentencing is required in this case for a number of reasons. First, the court erroneously calculated the loss attributable to Mr. Han. Second, the court failed to expressly resolve factual defeats as required by Rule 32. And the court also failed to give notice of two significant supervised release conditions that were imposed. Unless the court wants me to focus on a particular issue, I'll just take them in that order. First, the district court erroneously calculated the loss attributable to Mr. Han by relying on insufficiently reliable evidence that Mr. Han knew of additional funds that had been accessed from various banks as a result of counterfeit checks. Can I ask you a question about the counterfeit checks? They were, as I understand the record, Mr. Han's checks but with somebody else's signature on it, correct? Correct. Mr. Han's forged signature. Right, but they were actually Mr. Han from Mr. Han's checks, the ones the banks had provided him.  So given that, and given the fact that somebody else had Mr. Han's checks on which they forged his signature, why doesn't that show his sufficient responsibility for the loss? How did those checks end up in the hands of the forger, if you will? Well, Your Honor, I've handled a number of cases involving counterfeit checks where checks somehow end up in the hands of forgers and not necessarily... Well, but in this case, there's no dispute that the forgers, the people who benefited from the counterfeiting, were in cahoots with Mr. Han with respect to the parts of the mortgage fraud that you don't dispute, right? Well, Your Honor, it's not entirely clear who, in fact, accessed these funds and who, in fact, forged Mr. Han's signature on these checks. We don't know. And, in fact, the only evidence the government supported in support of this was an exhibit to their sentencing position, which is on page 67 of the excerpts of record. And specifically with respect to, for example, the money accessed from the Bank of America. In this spreadsheet, it indicates funds dispersed by, and it writes check, two question marks, which suggests the government does not know how this money was dispersed. And in terms of how the money was taken, while it lists Mr. Han for all the other banks, here for Bank of America, it says unknown. So we don't know, in fact, who accessed this money, who wrote these checks. We just don't know because the government did not submit anything that's sufficiently reliable to establish that loss. Isn't the issue just simply whether it's foreseeable? Isn't that what the guidelines require? Isn't it foreseeability? And this whole scheme involved his involvement with brokers and conveyance of just the kind of information that would allow money to be accessed from these accounts. So I think the probation department simply concluded that it was foreseeable that this additional funds, $340,000 or whatever it was, would be accessed by those people. Doesn't that meet the standard of 1B1.3A1? Well, reasonable foreseeability certainly is the standard. We would submit that it was not really reasonably foreseeable that someone would, in fact, forge Mr. Han's signature on these checks and then independently access these funds. Mr. Han did not receive these funds. At least it's our position that he did not access any of these funds. But that's not the standard, that he accessed the funds. It's a question of the loss, not whether he got the money. No, that's right. But what I'm suggesting is it was not reasonably foreseeable to Mr. Han that someone would forge his signature and then access those funds. Why not? I don't understand why it wouldn't be foreseeable. If he's sharing that information, if they're all part of the scheme, he's not doing this crime by himself. He's involved with a group of brokers. That's true. Why wouldn't it be reasonably foreseeable that they would access the account? Well, with respect to all of the other funds that had been accessed, Mr. Han accessed them. Mr. Han, in fact, went to the bank. He filled out the forms. He went to the bank. He took the money from the various home equity loans. He deposited them in his own bank. He was doing all of those things. This was something that was separate and apart from the things he was doing. Well, it seems to me there's really only two possibilities here. One is that people involved in the scheme with Mr. Han accessed the money, or a complete stranger stole his checks, forged his signature on it, and happened to access money in an account that he fraudulently set up. Given those two, isn't the former more reasonably foreseeable than the latter? Well, the fact is we just don't know, and it was the government's obligation. Well, we do know that somebody with Mr. Han's checks wrote his signature on it and accessed money from accounts that Mr. Han had illegally set up. That's true. And so the question is, is it more likely than not that that was a stranger to the entire transaction who just stole his checks or somebody that he was involved with in this deal who he gave the checks to? It seems to me the latter is more foreseeable, is it not? Well, again, Your Honor, it was the government's responsibility to adduce sufficiently reliable evidence, and it's our position they did not do that by simply submitting this spreadsheet, which apparently questions itself as to what happened with respect to at least the $200,000 from Bank of America. And if the $200,000 from Bank of America is not included in the loss calculation, well, then it reduces the loss enhancement that should have applied. Can you talk about the supervised release conditions? My question is, aren't these standard conditions? Well, the no-alcohol condition is not a standard condition. The standard condition is no excessive use of alcohol. But for someone who's an alcoholic, wouldn't no alcohol be – I mean, that seems like any alcohol would be excessive for an alcoholic, right? Perhaps. But again, because we didn't have the notice, and that's what we're arguing here, we did not have the notice of this condition. And so while it may be that it would be appropriate, we didn't have the opportunity to make arguments. But you're only entitled to notice, as I understand it, if it's not one of the standard conditions, right? That's correct. No alcohol is not a standard condition.  Well, whether or not it should have been opposed, I think, is a separate question. The question is whether it's on that list of standard conditions. It is not on that list of standard conditions, and therefore we were entitled to notice, advance notice. Now, it may be the court would ultimately, and may, perhaps should have ultimately imposed it. But we don't know, but we didn't know in advance, so we weren't able to put together the arguments that we would normally put together. But so your client's coming into sentencing, he's admitted that he's an alcoholic, and in fact that his alcoholism contributed to his criminal behavior, and he's presumably given notice by virtue of the standard list of conditions that no excessive alcohol could be an imposed condition. Why wouldn't that put him on notice that, hey, I might be subject to a no alcohol condition? Well, because no alcohol, again, is different from no excessive use of alcohol. But isn't any use of alcohol by an alcoholic excessive? Your Honor, maybe. I'm not aware of any case law that... Well, I guess, I know this is no harmless error issue, but what would you have said had the judge said, you're an alcoholic, normally the standard condition is no excessive use of alcohol, but since you're an alcoholic, I think that means no alcohol at all. Is there any response to that? Sure. I mean, the response is that Mr. Hom was going through a period of depression and he was using alcohol to mask that depression, that he may in fact not actually be an alcoholic, but he had certainly abused alcohol at the time. And while it may be appropriate to say he should not excessively use alcohol, that he may be able, in fact, to control his alcohol use. And certainly for the entire five-year period of supervised release, it would not necessarily be appropriate to ban all alcohol use for that entire period. And with respect to the community service, community service certainly is listed as a potential condition in the guidelines. But the guidelines also say that that should be limited to 400 hours of community service. Imposed here were 5,200 hours. I mean, we don't know because if he's employed, he's not subject to the community service condition, right? Well, that's true. But the court did impose a condition that could require 5,200 hours, which is 13 times what the guidelines contemplate. Let me stick up for the district judges a little bit here. You know, when you go out to sentence somebody, lots of things come into your mind when you're trying to decide what kind of a sentence to give to a defendant. And sometimes you want to keep from putting them into prison for a longer period of time and you use community service as a substitute for that. Other times you want to get them out of the house and get them some structure and get them some community involvement. And it seems to me that a significant community service condition of supervision, with the proviso that if you're full-time employed, you don't have to do that, and giving probation that flexibility is actually very much to the defendant's benefit. Well, and it may be, and a community service component certainly is not something we would necessarily object to. What we're objecting to here is the fact we'd have notice of the possibility of 5,200 hours of community service, which we would suggest is... Did anybody, did you, were you... I was not a trial counsel. Did trial counsel simply say to the district judge, hey, judge, that alcohol prohibition is a little much or the community service obligation is a little much? What she did object to it at the end of the proceeding. Again, the whole point here is we didn't have notice of these conditions, so we didn't have an opportunity to object to these in advance of the sentencing proceeding. But you did, somebody objected during the sentence, in the sentencing proceeding. Right. Right after the court imposed those conditions, she objected to those conditions, and what Judge Reel said was, well, you can do what you want, I'm imposing those conditions. So, you know, she made the objection that she could. In Judge Reel's courtroom, generally that's pretty much all you can do, Your Honor. So there was not really an opportunity to really discuss this. Okay, maybe we can hear, we'll give you some time for rebuttal. Hear from the government? Good morning, Your Honors. May it please the Court, Cheryl O'Connor on behalf of the United States. If I could start with the issue that the Court ended with, with Mr. Libby, with respect to the supervised release conditions. In this case, the defendant did have notice of these conditions. They were listed, both the alcohol condition and the community service condition. Well, as to the alcohol one, I take it Mr. Libby's point is that what was listed was you could be ordered to refrain from excessive use of alcohol. And what he's saying is that I have a much stricter condition imposed on me, I can't use alcohol at all, and my supervised release may be revoked because of that. And that's a pretty harsh condition, and at least I would have liked to have a chance to know in advance that that was something the judge was contemplating so I could have argued against it. What's wrong with that argument? Well, the problem with that argument, Your Honor, is that there are two other ways in which the defendant had notice that he'd be subject to a complete alcohol ban. Three other ways. One is that he asked for it. In paragraph 76 of the PSR, it reflects that the defendant, in the course of admitting that alcohol was partially to blame for his commission of the offense, admitted that he'd never received treatment for his alcohol dependency and indicated that he wanted such treatment. The defendant never objected to paragraph 76 of the PSR. And, in fact, at the tail end of the sentencing hearing, immediately prior to objecting to these conditions, defense counsel requested that the district court recommend defendant be referred to the RDAP program, Drug and Alcohol Treatment Program. So after specifically requesting alcohol treatment, it seems somewhat disingenuous to claim that he didn't have any notice that he would be subject to an alcohol ban. For five years. Pardon? For five years. For five years. That's true. That's true, Your Honor. Of course, it's not a five-year treatment program. It's not a five-year treatment program. But in addition, in addition to that, not only do the guidelines contemplate a ban on excessive use of alcohol, they also list in the discretionary provisions the ability for the court to impose substance abuse treatment, which also would include a ban on alcohol use. So the other issue is, Your Honors, that this should be evaluated under plain error. Because although the defendant did object at the time of sentencing to the imposition of the ban, he never raised below the issue of lack of prior notice. And the issue of notice is that the defendant should be given the opportunity to make arguments and the opportunity to be heard on this. And although Mr. Libby's characterization of Judge Real's procedures may be accurate in other contexts, in this case there's evidence that Judge Real may have granted a continuance, may have given the defendant additional time to address this. I say that because this was the second sentencing proceeding. There had been an original sentencing proceeding at which the defendant raised an issue regarding the Korean translation of some phone calls that are not at issue in this appeal, but were of significance at the sentencing. And the court immediately terminated the sentencing proceedings and put it over to give the defendant an opportunity to address that issue. So had the defendant raised the notice issue here, had the defendant taken the opportunity that he had to address these conditions and sought more time to develop the record better, it's likely that he would have been given the opportunity to do so. So even if there's slight, even if there's any merit to his claim that excessive alcohol limitation isn't tantamount to a ban on alcohol for five years, it certainly doesn't rise to the level of plain error in this case. Could you just clarify for me, how was the defendant in your view to object to these conditions in advance? What was the procedural mechanism? Well, one of the things that he could have done was objected to paragraph 76 of the probation report and indicate that either he didn't actually want the drug treatment program after all or indicate that his alcohol dependency was limited to this particular time in such that a more lenient restriction on his alcohol use. I don't think you can read that paragraph of the PSR as the defendant saying, please judge, ban me from having a drop of alcohol for five years. I think that's a fair point, Your Honor. But it certainly put the defendant on notice that this matter was at issue in sentencing him and that his use of alcohol was a significant factor that was going to be under consideration in sentencing him. Maybe you could just turn to the loss issue. Certainly. I mean, why – Mr. Churwitz has nicely put the two scenarios, but why is it – I mean, we can speculate about which one seems more realistic, but why is one more reasonably foreseeable? That's what I'm stuck on. Why is it reasonably foreseeable to the defendant that, hey, someone might steal my checkbook. Well, the defendant painted himself as sort of a pawn of these brokers. He characterized himself as having limited English. He characterized the brokers as the ones really being in control of this scheme and that they gave him the documents that he merely filled them out and that they took care of more of the major details. He also, in trying to minimize his conduct and in requesting leniency at sentencing, claimed that he only received 30% of the proceeds of the fraud. And so for both of those reasons, that the brokers – that he claimed the brokers were more in control and that he claimed that the brokers were getting more of the profits, I think that it would be reasonably foreseeable to him that they were also engaging in getting additional proceeds by paying down the loans in this way. And was I right in my question before that the actual physical checks were checks belonging to Mr. Hahn even though they didn't bear his signature? Your Honor, I believe that that's correct. I ask because, as I asked your colleague here, I couldn't quite find it in the record. It seemed likely, but I just couldn't tell. I believe that that's correct. I wasn't trial counsel, so I can't say with certainty. I'm limited, as the Court is, to what's in the record as well. But I agree with the Court's assessment that it seems highly unlikely that some stranger would have come in and accessed these funds. It had to be either the defendant or his co-conspirators. The other issue is that the defendant didn't contest reasonable foreseeability below. The defendant's objection below was that he didn't write the checks and he didn't access the funds. He didn't contest the issue of relevant conduct, of reasonable foreseeability, or that it was part of a common scheme or plan. So the District Court's adoption of the probation of the PSR's calculation of loss was supported by its actual findings and was not an abuse of discretion in this case. The Court would like me to address the other Rule 32 issue? I don't have any questions. Okay. Thank you very much. Thank you. Counsel, I think you're over your time, but we'll give you a minute for rebuttal. Your Honor, with respect to whether an objection needs to be made for lack of notice, I do not read any of this Court's case law as, in fact, requiring an objection when the Court has not given notice of a supervised release condition. I know the government has taken that position, but I don't see any Ninth Circuit case that, in fact, requires an objection. What about the Watson case? I can't give you any more than that than I know it was from 2009. I thought that maybe there we had imposed a requirement that you object on the ground that, hey, I didn't get sufficient advance notice. Your Honor, I'm not familiar enough with that case to be able to comment. I can say that an en banc panel of this Court in Fernandez and Gullo did not require an objection, that it was automatic resentencing, that automatically it goes back for lack of notice. You see, in the normal course of events, one would think, and I take your point about Judge Rial's courtroom, that somebody might say to the district judge, hey, wait a minute, I didn't know you were thinking about that. That's not one of the standard conditions. Can I have a chance to make a record? Exactly how it goes down in the real world. You think something's come up at sentencing. You didn't have notice of it. The attorney says to the judge, I didn't have notice of that. I'd like an opportunity to brief it. I'd like an opportunity to do some research or whatever. That didn't happen. Well, no, that's true. You're putting the onus. My problem with this is you're putting the onus on the district judge to say, well, I'm thinking of a total alcohol ban versus a partial alcohol ban, or I'm thinking of 500 hours of community services, 400 hours, so now I've got to send a notice to you that I'm thinking about that, and that doesn't seem like a good idea to me. Whereas you, as attorneys, can say, wait a second, I want an opportunity to file something on this. Your Honor, I'm absolutely saying the onus is on the district judge to do that because that's what this court's case law says. What the court said in Wise, what it said in Doe, it said the onus is on, and it's not that Doe that I believe in. I don't want to prolong this. I'm sorry. But I thought Wise said that that was the district judge's obligation if the judge was going to impose a condition that was not listed in either the mandatory or the non-mandatory conditions, something outside of that list. That's correct. And the no alcohol condition is not on that list. Therefore, advance notice was required. And it's for all the reasons that the court has given in Wise and other cases. Is there any case that says that? There's a case from the First Circuit that says that's not the case, specifically that a total ban is not a departure from the excessive use. Well, this court's decision in Betz actually makes the distinction between a no excessive use of alcohol and a no alcohol condition. In that case, it actually reversed a no alcohol condition and made it very clear that's very different from the standard condition of no excessive use. So this court, in fact, has made that very clear distinction. Okay. Thank you, counsel. The case just argued will stand submitted. We will hear argument next in United States of America v. Ward. United States of America v. Bagby has been submitted on the brief, so we will not hear argument in that case, but we will hear from counsel in United States v. Ward. Thank you. Okay. It's face to court. Sabina Chan on behalf of Doar and Ward. I'd like to reserve three minutes for rebuttal. Okay. The Fifth Amendment grand jury clause guarantees the federal defendant will be tried only on charges presented in an indictment returned by the grand jury. Here, the grand jury charged Mr. Ward with two specific instances of aggravated identity theft in violation of 1028A. Over Mr. Ward's objections, the government introduced evidence of numerous alleged instances of aggravated identity theft. And over both the government and Mr. Ward's objections, the jury instructions did not limit the jury to the consideration of the charged instances. Can we focus on the jury instruction issue for a moment? Let's assume that we think that this other evidence was relevant to show knowledge that real persons' identities were stolen. With respect to counts six and seven, I take it at trial, at least, the government agreed that the instruction should have included the names of the actual victims. What I'm interested in is whether or not that was reversible error in light of the fact that the jury had the indictment with it, that the government argued the specific victims in its summation. It said, these are the victims of count six, this is the victim of count seven. You heard from them. You heard their testimony. So my question is, was the judge's omission of the names from his instructions reversible error? And if so, why? Well, if the court finds that it's a constructive amendment, then it is reversible. Well, of course, that's the question. Is it a constructive amendment or is it just a mere variance? And so those are conclusory terms. Tell me why what the judge did here demands reversal, given all those other facts that I've just mentioned. I don't believe that the government's argument would have cured the error, because the government was not quite clear as to who was the victim of count seven and who was the victim of count six. In fact, especially in their rebuttal argument, they blended all of the victims together. They talked about how Mr. Ward definitely knew these were victims, these were true people, because some of these credit card accounts had been open since 1988, for instance. That was not either of the alleged victims. That's the evidentiary issue, isn't it? I mean, as I understand this case, your client said, with respect to count six and seven, he wanted to plead to one through five, but the court wouldn't let him. I didn't know if those were real people, so this wasn't identity theft. It was mere fraud or something else like that. And the government said, well, we've got all these other ones where we can show you knew that you were taking the identities of real people or defrauding real people, and that goes to your knowledge on count six and seven. So I'm not very sympathetic to your argument that the evidence should have been excluded or that they couldn't argue it. But it wasn't their argument. These are the victims of count six and seven. I can identify them for you. Here they are. They testified. And given that the jury also had the indictment with it, why wasn't it harmless under those circumstances? It was just a variance, if you will. When the government argued to the judge, they were quite clear that the victims were these two individuals and all the other evidence was merely circumstantial evidence to show that he knew that the victims were real people. But when the government argued to the jury, they didn't make that distinction. And there was really no reason for them to make that distinction because they expected that the jury would be instructed, count six involves this victim and count seven involves that victim. So I'm not blaming the government. I'm not saying that their argument was improper. Their argument would be quite proper if the instructions had been proper. I think your second question is more difficult, and that's with regard to whether the jury having the indictment would absorb the error. But in every constructive amendment case, we have a very specific indictment and then we have a more general instruction. And in none of those cases have they said that the more specific indictment accrues the error. What we do is we assume that the jury follows the instructions. And in this case, the instructions on the count six and seven said the defendant is charged in count six with blah, blah, blah. In order to be found guilty... A person. You must find that he took the identity of a person. Exactly. Which could be any of the people. Absolutely. I understand that. If we assume that the jury follows the instructions and all the case law says that that is what we're supposed to do, we can't say that the jury would necessarily have said, I think that there's something more we need to find. I think that we need to find something that's not in the instructions here. I think we need to find something that's in the indictment. And, in fact, if you look at the jury's instructions, in many cases it does cross-reference the indictment much closer. It will say as described in or as detailed in. But in this particular, these two counts, it just says he's charged in count six with this crime. In order to be found guilty, these are the elements. And the element was a person. Don't you have a couple of other things working against you here, though? The indictment was also read to the jurors during the selection process, so they were made aware of the specific nature of counts six and seven. The judge also gave an instruction, a general instruction to the jury that they're only to consider each count and not to convict the defendant based on other conduct, a generic instruction. And then, of course, the indictment in the room. There is a case out of the Sixth Circuit, I think it was the Nixon case, which talks about the importance of the indictment being with the jury in the jury room. It seems to me that's a lot of what this comes down to, that it's a question of whether the jury having the indictment and being made aware of the nature of the charge overcomes this problem. Well, first of all, the Nixon case is on plain error, and it's in the Sixth Circuit. So there was no objection in that case, and I think that places it in a very different light than this case. Not only was there an objection in this case, but the objection came from both parties. So both parties were concerned that the instruction as given was not specific enough. With regard to the indictment being read to the jury during jury selection, I mean, in all realisticness, this was literally during jury selection. So this is when the jurors are sitting back there looking at their iPhones, et cetera. I mean, I've selected jurors before, and I don't think anyone is listening to the charges. Well, we're being asked this morning to take judicial notice of a lot of things that happen in district courts. So I don't think that that actually adds anything to the analysis. Again, I think the harder question is, did the indictment being in the room with the jury make a difference? And in some cases it might. If, for instance, if it said, a person, the person charged in Count 5 or Count 6, or even if it just said the charged person, but it simply said a person. And I return again to the rule that we presume that jurors follow the instructions, and that was the instruction in this case. In this case, it's not even that they could have convicted on the basis of the brand. Some people could have thought it was a brand, and some people could have thought it was Mr. Hagler, and somebody could have thought it was Mr. Glad, and someone else could have thought it was Mr. Bitter, and that would have been enough to convict. The jury was given a specific unanimity instruction, but the specific unanimity instruction went only to whether the identity was possessed, transferred, or used. So they were told there's some things you all need to agree to specifically, possessed, transferred, or used. Did the defendant request an instruction at the time this evidence of the other victims was introduced at trial, a limiting instruction with respect to the use of that evidence? I don't believe he did. And again, the argument on appeal is not that it was improper to put that evidence in because, you know, this is a weird case where there were a bunch of charges that the court was requiring him to go to trial on, even though he wanted to plead guilty to, and he admitted all of them. So I don't think it was an abuse of discretion for the court to allow the government to prove those facts, even though they weren't in question. The real problem was the jury instruction. I think everyone behaved appropriately. I think the argument was appropriate. You know, the argument that the government made that this is all the evidence in this case that he knew these people were real people. Because at the time that the government made that argument, it understood that the jury would be instructed. You can't convict a defendant. Why does this only come up after the judge has given the instruction? I don't understand that. Was there no charge conference here? Did the parties not submit proposed instructions? There was no charge conference. And, again, if you can remember sort of what actually happens in district court, I think what frequently happens in district court is when you sit there and you listen to the instructions, especially in light of what has happened at trial, they sound different to you. And at that time, after this trial had occurred, and there was so much evidence about the other victims, and then there were closing arguments, and there was so much discussion about the other victims, and then the charge was read, that's when it occurred to both lawyers, wait, there's something wrong here. I mean, I remember the first jury trial I had. I agreed to all these conspiracy instructions. And then when the judge started reading them and it went on for like an hour, I objected. I don't understand in this record that maybe I'm wrong, that the judge was, the party said to the judge, don't give that instruction. He thought about it and said, no, I'm going to. Did this all occur post-instruction? Post-instruction. But go back to your client's case. Your client's only defense in this case, as I understood it, was I didn't understand that these were real people for count six and seven, right? Yes, that's correct. In light of that defense, does the error in leaving the names out of the instruction take less significance? I think no, for two reasons. First of all, we don't really know what the defense would have been if he had known that he was being charged with all these other defendants. I mean, it's not on the record what his defense would be, and it wouldn't be because he wasn't charged with those. And if you look at the Ninth Circuit's constructive amendment cases, they never really look at, well, if he had known he had been charged with this, what would the defense have been? In fact, if you look at Sterone, which is the case with the sand versus the steel, the court doesn't examine, well, if he had known that the defense, if he had known he was charged with interfering with the export of steel as opposed to the import of sand, would the defense have been different? So that, I think, is the first. Well, but in this case, your client knew from the indictment that he was charged or she was charged with, he was charged with these two specific identity thefts, correct? Correct. And constructed a defense around that which said, I'm not claiming that something wasn't done here. My claim is that I just didn't know these were real people. I thought we were making up identities, more or less. That was the defense, right? Right. Given that defense, does the error in leaving the names of the people out matter? How did it prejudice your client? Well, again, first of all, he may have had a different defense as to the other individuals. We don't know that. But second of all, if we find a constructive amendment, there is no prejudice inquiry. It is an automatic reversal. And third, even if – But my question is if we don't find a constructive amendment, can you prove – is this a case in which you can prove prejudice? There are other things that the grand jury presentment requirement protects. The first is grand jury presentment. You can only be convicted of something that the grand jury charged you with. So if the jurors convicted him based on the grant and the grand jury didn't charge that, it's not a matter of notice. It's just that he's being convicted of something that the grand jury didn't charge. Well, I know you want to save some time for rebuttal, but I think now you're making two different arguments. If it's constructive amendment, then all these arguments about presentment, et cetera, are important and we don't look for prejudice. But if it's only a variance, then we have to look for prejudice. My question is if it's only that, how is your client prejudiced? Okay, two things. First of all, another way you can look for prejudice is whether he would be able to plead a double jeopardy bar. So if the government were to want to charge him now with 1028 against the grant, he would not be able to plead the bar, even though he may well have been convicted based on the grant. And second, I know I want to reserve some time for rebuttal. I think that it's very clearly not a variance, and perhaps I'll come back and talk more to you about the difference between constructive amendment and variances, because I think the law is quite muddled. But I think there is a way to clarify it. But why don't I let Ms. Steeler talk for a while, and then I'll come back and talk again. And when you come back, if you could just distill for us the legal principle that's going to put your case on the side of constructive amendment as opposed to variance. Because that's not clear in my mind, and that would be the most helpful thing. It's really a muddy, muddy area, and actually the first thing I was going to talk about, but I got taken in a different direction. I will come back. Okay, good. We'll give you time to make that distinction clear. And now we'll hear from the government. Good morning, Your Honors. May it please the Court. Kathy Ostler on behalf of the United States. Maybe you could start. Shed that light that we're all looking for. Here's the clean line that shows that this is on the side of variance as opposed to constructive amendment. Well, Your Honors, we probably wouldn't have been here today had the judge just put this on the side of variance. You're blameless in this. Everybody agrees you're blameless. What's the answer to Judge Watford's question? The government submits that this is not a constructive amendment for a number of reasons. First of all, as Your Honors have noted, the victim's names were identified in the indictment, and the defendant had notice of the names being in the indictment. But that's true in every constructive amendment case. The indictment is sufficient, and then the instruction is different. That's correct. That doesn't get us to the other side of the line. What does get us there? What makes this different, Your Honor, is that the indictment went back to the jury in this case, and the jury had it in the jury room and was able to reference back to the indictment, which is why the judge ultimately said he was not going to put the names in. Okay. Let's say that I'm not persuaded by that. I'm focused on what the jury instructions. I do think defense counsel is right that in every other area of the law, we focus on what the jury instructions require, and here they did not require. They didn't even say, go look at the indictment. They just said it has to be a real person. So let's put that one aside as well. What's the... Right, Your Honor. Well, I just want to correct one thing, though. They do actually reference the counts, so to the extent that the jury would look at the instruction and it says in count six, they could refer back to count six where the victim's initials are referenced. However, putting that aside, when we look at most of these constructive amendment cases, there's usually some kind of affirmative misinstruction by the judge. For example, in Sterone, the case was about sand shipments. The judge instructs on sand or steel. It says you can convict on either. Similarly, in Dipentino, that's a Ninth Circuit case. The judge instructs that you can... Either Clean Air Act violation would amount to a... I'm sorry, either a violation of the work practice standard would be... Why isn't this case essentially the same? The judge instructed as to count six and seven that the defendant could be convicted if he stole the identity of a person. And there were many people in the case about whom there was evidence that their identities had been stolen. The judge never instructed the jury, though, that it could convict on any of the victims. No, but he did say a person. He did say a real person. That's correct. But at that point in time, we have to look at the instruction in the context of how the jury would understand it in terms of everything that had happened at the trial. We heard my opening statement. I referenced those two particular victims. I was very clear to mention them. In the evidence that was presented, the jury heard from those victims. And then in closing, my colleague did, in fact, mention those two victims again. I would agree with Ms. Chen that he didn't mention them as much in his rebuttal as he did in his initial closing, but that was the last thing he said to the jury before he left, before he finished his rebuttal. He did mention those two victims. That just seems like you're trying to just sort of build a scaffolding around a flawed instruction. And you started out to say this is, I don't know if you were saying this is like those other cases or unlike. It seems to me it's unlike those other constructive. Those are all constructive amendment cases by addition, the sand and the steel, for example. This is a constructive amendment situation by omission. And it seems to me that it's right on all fours with the Lightman or Lichtman, I don't know how you pronounce it, case out of the Seventh Circuit. Of all the cases that were cited, that's the one that seems almost exactly on point. And I'd like you to explain why that opinion is wrong. Certainly, Your Honor. That's actually a case that I think is distinguishable here. I would argue that this case is more, our case is more similar to the Hartz case out of the Ninth Circuit. But I'll address the Litman or Lichtman. I'd like you to explain why you think it's more like Hartz than Lichtman, because I'm not sure I agree with that. So, as you know, in the Seventh Circuit case, there was a 924C charge, and there was drug evidence and two handguns and a rifle. The prosecutor in that case made a charging decision to charge only the rifle. And at trial, the prosecutor introduced evidence of the rifle and the two handguns. And then the jury instruction, as the Court noted, mentioned a firearm without specifying which firearm. Why I would argue that case is different is because the Seventh Circuit really seemed to have an issue there with the prosecutor's actions. The charging decision specifically not to charge the two handguns because the prosecutor did not think there was enough of an evidentiary connection to the drug evidence, and then to, nonetheless, go in and argue at trial all of the two handguns and the rifle, and then the jury instruction is ambiguous. But to Judge Watford's question originally, that might have been true in terms of the Court's explanation, but that wasn't the legal principle that the Court relied on. The legal principle it relied on was when you specifically charge a Mossberg and then you put evidence in of three guns and don't tell the jury in the instruction that they have to convict based on the Mossberg in the 924C count, that's a constructive amendment because you're allowing the jury to convict on the other two guns. It seems just like this case. You put the two names in Counts 6 and 7, and then you put evidence on of six victims or however many, and then you don't tell the jury it's those two victims. Now, you could have a lot of rhetoric about, you know, criticizing the prosecutor for making choices about what they put in and how they charged and so forth, but that's not the principle. Actually, Your Honor, I do think it was relevant to the Court's decision there because it was a notice issue. The defendant was only on notice that the rifle was going to be at issue, and then at trial all of this other evidence was introduced. I would say in contrast in our case, the indictment was clear that we meant those two victims. At trial, we had to introduce evidence of other victims because they were referenced in Counts 1, 2, 3, and 5. They weren't, you know, we had to introduce that evidence despite the stipulation because the government bears the burden here, as the Court knows. Let me try articulating the legal principle that I would perhaps use to govern this case, and it would cause you to lose, so I want you to tell me why it's wrong. Listen carefully, then. So I agree with Judge Smith. I think that Seventh Circuit case seems very on point, as does our own decision much earlier in Howard's case involving the two prostitutes. So I guess I think of it as this. Our job is to figure out whether the jury was allowed to convict based on a charge that we don't know the grand jury would have indicted the defendant for, right? So here, we know that the grand jury said, yeah, there was enough evidence to indict Mr. Ward for identity theft as to these two specific victims, but we don't know whether the grand jury would have indicted him for identity theft with respect to those other people. They were never presented with that. And as I read Sterome, the Fifth Amendment right we're trying to protect here is the defendant's, you know, right to have the grand jury indict him on the crime that he's actually convicted of. And I just see, given the nature of this crime, it has to be a very specific real person that you're charged with. We don't know whether the grand jury would, in fact, have charged him with identity theft as to these other victims. Your Honor, I'm glad you brought up the Howard case because that was one of the cases I was thinking about when I was talking about the affirmative misinstruction. As the court may recall, in that case, the judge said to the jury, they had raised the question about which women were at issue, and the court actually submitted a supplemental instruction that said, you can ignore the indictment, but don't worry about what the indictment says. Right, but see, I think that's why the Seventh Circuit case seems so on point because it sort of extends that same logic. Look, we don't know if the grand jury, in fact, would have indicted the defendant for this other crime. And it just says, well, if you just leave it ambiguous so that the jury could have convicted the defendant of this other crime that was never presented to the grand jury, that's enough to cause it to be a constructive amendment. I would argue, Your Honor, that this case is more like Hart's than like Leighton or Leighton. And the reason I say that is because in Hart's, there is, again, three different guns. Two different guns, and both were charged in the indictment. That's what's different. That's correct, Your Honor, but there's also a reference to another gun. There was evidence of receipt for sale of a gun or purchase of a gun that was found at the defendant's house, and that evidence came out at trial in the course of showing that it was the defendant's house. So I think the argument was that there was an issue as to whether the jury might have understood that that other gun was involved somehow, although there, as here, the prosecutor never argued that at trial. There was no evidence that this other, I think it was a 35 millimeter, was referenced at all in the actions in the Hart's case. And, again, here, you know, we never argued that these two victims, that there were any other victims. Tell me why the legal principle I've articulated is wrong, because, again, if I'm focused on protecting the defendant's right to have the grand jury charge him with the crime he's ultimately convicted of, and I look at this record and I say, you know what, he could have been convicted of identity theft as to some other person that the grand jury was never presented, they were never presented with that particular charge. If I think of that as putting us on the constructive amendment side of the line, tell me why that's, why isn't that the right principle to use here? I can only go back to the Nixon case, Your Honor, and reference that again. In my mind, the Nixon case is very similar to this. It's on all fours. You have a reference to a bank without specifying which bank, but the court looks back at the fact that, A, the indictment went back to the jury. B, the relevant evidence at trial was pertaining to that. But that's the difference between Nixon. In Nixon, there was only evidence of one bank. One federally insured bank. One federally insured bank. And here there's evidence of many individuals. Yes, Your Honor, but when we argued about the real person issue, which became the substance of the closing and also the rebuttal, we focused on specific things that were pertinent to those two victims. For example, in Mr. Glenn's case, that his bank account had been taken over as well and used to pay his credit card bill so that they could increase his credit rate. I'm sorry, I didn't mean to interrupt you. Sorry. What I'm interested in is where Judge Watford was going in this. What he said was, let's assume sending the indictment back with the jury doesn't get you on the variant side of the line. You're still on the constructive side of the line. Can the government's jury argument cure the Sixth Amendment problem? I think, Your Honor, you have to look at it in the context of the entire case. But that's my question. If we have a constitutional problem here, can the government acting in perfect good faith, as you apparently did here, cure the problem simply by making an argument that the judge then instructs the jury to remember is just an argument and I'll instruct you on the law? I would argue, Your Honor, that in this case what the jury had in front of it, they have to take into account everything they've heard. So that's the evidence they've heard at trial, that's the opening statement, that's the jury instruction, that's the closing argument, it's what the indictment says. So, see, the principle that you're articulating, because I want to hear how your opponent responds to it, is we might have something that looks like a constructive amendment on the surface. But the way this trial was conducted, you can be reasonably sure that the jury didn't convict him of a crime that the grand jury didn't indict him for. Is that your argument? That is my argument. Okay, so your legal principle is that we can have something that looks like a constructive amendment, but the way the evidence comes in and the way the parties argue the case can give us reasonable assurance that the jury didn't really convict him of another crime. I'm trying to be fair. Is that your argument? That's the argument. And I'd just like to ask, what's the best case that supports that principle that Judge Erwitz has just articulated? Because I think that's a good argument for you, if that's the law. Okay. So tell us what supports it. Well, Your Honors, we've cited to you a number of cases out of the Ninth Circuit where the principle seems to be that if the proof at trial matches the charges and the jury does not hear anything other than that, that that's sufficient. Okay. Why is that this case? Because the proof at trial here exceeded the charges, if you will. Match the charges. In other words, you proved Counts 6 and 7, so you certainly gave sufficient evidence to the jury to convict. And we had to prove 1, 2, 3, and 5 as well. And you proved 1, 2, 3, and 5, and in proving those, you submitted evidence to the jury that under the instructions, it could have used to convict the defendant for a crime for which he wasn't indicted. Is that so? The Ninth Circuit cases, as I read them, and this is why I'm looking for some guidance from you, involve cases where there was really no way, given the evidence at trial, that the jury could have said, oh, what the judge is telling us is that I can convict this defendant on the basis of another bank that nobody has ever mentioned to us, or something like that. So the question here is, given all the evidence that came in, not your fault. I repeat that. Why isn't this on the other side of the line, even given your best case? And I guess I would just go back to the fact that we were very careful in the evidence we presented in our closing to focus on why the defendant knew these were real people. So your central point is you could fix it, that the government fixed it. The judge erred, but the government fixed it. Well, at the time that we did the closing argument, the judge hadn't created a problem yet. That puts a lot of power in the prosecutor, and it puts a big burden on the defendant when you create a kind of moving line here about when and how a constitutional problem can be fixed. If the rule is going to be, depending on how the government argues it in its closing, it may or may not be a reversible error for what we would be finding to be a constitutional problem. If I could address that really quickly, because I see I'm out of time. Please. One of the things that we felt here is that there wasn't a proper constructive amendment objection raised. I mean, if you look back at what the defense attorney said, there was no reference to the Fifth Amendment. I have to tell you, I have a real problem with that, because the defendant was in the process of making a very specific objection. And were you the prosecutor? I was. I was not the one who spoke at the time. And you basically interrupted and said, we agree. And now you come back and say, oh, they weren't specific enough. I don't buy that. I don't either. Do you have another response? Go ahead. Go ahead. So don't waste time on it. Is there another response? I would say that if the court determines that de novo is the proper standard that we believe we've proven that de novo is the standard. I guess the question is, it's really bright line versus moving line. And you're really saying your argument is the judge and the court of appeals ought to be able to look holistically at the proof and the way it was argued and so forth and decide whether it was reversible or not because of a constitutional violation. It seems if it's a constitutional violation, maybe a bright line is a better way to go. That bright line may be jury had the indictment. That's all. And I would just say that the omission of specifics from the jury instruction has been, this court has found that that's not a constructive amendment in Hart's, in Olson. I hate to prolong this, but I don't think you're right. I don't think you're right about Hart's because the court in Hart's said specifically that here, referring to Leichman, here that was, I'm sorry, referring to Leichman. Here that was not, however, that was not the case. The proof offered at trial matched the charges made in the indictment. The testimony in the exhibits offered by the government suggested that Hart's had robbed the gun design using one of the weapons described in the indictment. So the court actually did not rely or did not refer to the other gun that you mentioned before. I think in my reading of the case was that that was sort of within the scope of the argument, that that was the possible other gun that the jury might have considered. That's how I understood that, how I interpreted that. But my point is the jury instruction there just mentioned a firearm. It didn't mention specific guns. The court found no constructive amendment. Similarly, in Olson, there was no reference to the specific. It didn't specify the actual item that was in that case. I believe it was theft. And sorry, I don't want to keep prolonging this. But the point is that these cases suggest, and others that we've cited in our papers, suggest that the absence of the specific term is maybe a variance but not a constructive amendment. I would just submit that to the court. Thank you. Thank you, counsel, for your argument. Can we give defense counsel three minutes for a vote? Well, I'm sure I'm lucky I let you all do the argument because I think that Judge Watford said exactly what I had intended to say, that the difference between a constructive amendment and a variance is a constructive amendment occurs when the instruction allows the jury to convict the defendant of a charge that was not brought by the grand jury. So why isn't Hart's a constructive amendment? Well, Hart's is quite different. I don't even think Hart's was a variance. I know that this court called it a variance. But I think that what they really meant was it's not a constructive amendment. And in Hart's, there was no evidence of another gun. The only other gun that they sort of mentioned was that there was a receipt for a gun that was introduced as evidence that that property, the location, belonged to the defendant. So there was no other gun in that case. And so it doesn't even seem like a variance in that particular case. It was just a failed constructive amendment argument. There was no evidence. There was no argument. There was nothing else that the jury could have convicted on. Well, you told us when you sat down you were going to enlighten us. And assuming that Judge Watford hasn't already said what you were going to say, tell us how you're going to enlighten us. I think that Judge Watford has said what I was already going to say. But I think that the cases are actually quite clear as to what a constructive amendment is. The cases are very muddy as to what a variance is. So a constructive amendment is a case in which the instructions and the evidence. It can't just be the instructions. It has to be instructions. And then there has to be some evidence that would allow the jury to use those instructions to convict on something else. What a variance is, I think some of the courts seem to think a variance is a failed constructive amendment argument. But I don't think that's correct. Is this purely a question of law? Yes. And how do we decide when we have a failed constructive amendment? I think a failed constructive amendment is a case like Hart's or a case like Garcia-Paz, which Hart's relies on. So a case like Hart's is, well, they didn't say which firearm it was, right? But there was no other firearm. So your principle, if I can distill it, is that it can be a variance when there is no evidence from which the jury could have convicted the defendant. I don't really think so. I mean, I think that's a failed constructive amendment. I think a variance is, and this is the example. Okay. It's a failed, I'll adopt your terms, but it's not quibble over terms. Your argument is that we cross the line, we don't cross the line if there is no evidence from which the jury could have convicted the defendant of the other crime. Right. So, for instance, in one of the cases she referred to, I think Olson, it was a money or property case. So they stole either money or property. It was a case in which they were selling these mattresses, but they would take people's money and then the people would never get the mattresses, okay? And the jury was instructed that it was money or property. But there was no evidence in that case that there was any property that was taken from anyone. So even though the instruction said you can convict on property, there wasn't any evidence in that case. So your principle, her principle is the indictment went to the jury. Your principle is if there was evidence from which the jury could have convicted of the uncharged crime, that's enough and we're now on the constructive amendment side of the. Yes. Okay. All right. Thank you, counsel. I appreciate the argument. United States v. Ward will stand submitted. Yes. Okay. We will hear argument in the last case on the calendar, which is people of the state of California versus the United States Department. Extra. I'm sorry. People in the state of California. XRL Imperial County Air Pollution Control District versus United States Department of the Interior. Oh, yeah. Yeah. We will take you all. I'm sorry. We'll take a ten minute break before we have you guys. So when you come back, hopefully you'll be set up. Thank you. All right. Yeah. All right. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. All right. Okay. Let's see. So you are... I'm... May it please the court, Your Honors, good morning. My name is Aileen Tabor and I represent Imperial County Air Pollution Control District. Got it. So just before you proceed, can I ask how is the... How is the other side going to divide the time? Your Honor, I tried to speak for 17 minutes for the Department of Interior. There's a woman here from the Colorado Water District and she'd like to speak to the treatment. Although, we... Okay. Great. That's fine. All right. Sorry to interrupt you. That's okay, Your Honor. I just wanted to introduce at the council table, we have Catherine Casey who also represents the Air District, Mr. Rossman, Tony Rossman that represents the County of Imperial, and Mr. Mike Rude who is county... Imperial County Council. And in the audience is Barbara Baird who represents the South Coast Air Quality Management District in case you have any questions of the amicus. Okay. Great. So good morning, Your Honors. I'm going to deal with the issues of three things, one of them being the standing issue in the context...
judges: Smith, Watford, Hurwitz